**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**EQUAL EMPLOYMENT OPPORTUNITY**
**COMMISSION,**

                                        **Plaintiff,**

                    **v.**                                            **5:98-CV-1772**
                                                                      **(FJS/GHL)**

**CARROLS CORPORATION,**

                                        **Defendant.**
_____

**APPEARANCES**                              **OF COUNSEL**

**EQUAL EMPLOYMENT OPPORTUNITY**             **ADELA P. SANTOS, ESQ.**
**COMMISSION**                               **SUNU P. CHANDY, ESQ.**
33 Whitehall Street
5th Floor
New York, New York 10004
Attorneys for Plaintiff

**ORRICK, HERRINGTON &**                     **JOHN D. GIANSELLO, III, ESQ.**
**SUTCLIFFE LLP**                            **MICHAEL DELIKAT, ESQ.**
666 Fifth Avenue
New York, New York 10103
Attorneys for Defendant


**SCULLIN, Chief Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

        Defendant is a corporation that owns and operates approximately 350 Burger King

restaurants in sixteen states.  Prompted by a complaint that a former employee of Defendant's

Glens Falls, New York facility filed, Plaintiff commenced an investigation of Defendant's

employment practices and has focused its investigation on a nine-year period from 1993 through

2001.

Plaintiff brings this employment discrimination action under two distinct statutory provisions.  First, it brings pattern or practice claims pursuant to 42 U.S.C. § 2000e-6 for (1) hostile work environment sexual harassment, (2) failure to remedy alleged instances of sexual harassment, (3) retaliation against employees who complained about sexual harassment, and (4) constructive discharge of employees by failing to remedy a hostile work environment.[1]  Second, it brings claims on behalf of individual female employees of Defendant pursuant to 42 U.S.C. § 2000e-5(f)(1) for the same four types of conduct.

As a result of such claims, Plaintiff seeks (1) a permanent injunction enjoining Defendant from engaging in any employment practices that discriminate on the basis of sex, retaliation and/or constructive discharge, (2) an order requiring Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for employees engaged in protected activity and eradicate the effects of Defendant's past and present unlawful employment practices, (3) back pay, compensatory damages, and punitive damages for all individuals whom Defendant's unlawful employment practices have already affected, and (4) costs incurred in this action.

---

[1] Section 2000e-6(a) provides, in pertinent part, that

> [w]henever the [Commission] has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the [Commission] may bring a civil action . . . .

42 U.S.C. § 2000e-6(a) (§ 2000e-6(d) transferred to the Commission the functions of § 2000e-6 that the Attorney General initially possessed).

Currently before the Court is Defendant's renewed motion for summary judgment.[2] Although Defendant seeks the dismissal of all of Plaintiff's claims, the factual and legal bases of Defendant's arguments are only relevant to Plaintiff's pattern or practice claims.[3]  Therefore, since neither party has addressed the claims that Plaintiff brings on behalf of individual female employees of Defendant, the Court will limit its consideration to Plaintiff's pattern or practice claims.

The Court has heard oral argument in support of, and in opposition to, this motion and has carefully considered the parties' numerous submissions.  The following constitutes the Court's written determination of Defendant's pending motion.


## II. DISCUSSION

### A.      Standard of review

A court may grant a motion for summary judgment when the moving party carries its burden of showing the absence of a genuine issue of material fact.  *See* Fed. R. Civ. P. 56(c).  In making this determination, the court must resolve all ambiguities and draw all reasonable inferences in a light most favorable to the non-moving party.  *See Bryant v. Maffucci*, 923 F.2d

---

[2] Also currently before the Court are (1) Plaintiff's motions to exclude the opinions of Defendants' experts, Eugene P. Ericksen and David S. Evans, and (2) Defendant's motion to exclude the opinions of Plaintiff's expert, Louise Fitzgerald.  *See* Docket No. 96-98.  Given the Court's determination of Defendant's summary judgment motion, it denies these motions to exclude as moot.

[3] Defendant essentially argues (1) that a pattern or practice action may never be maintained for hostile work environment sexual harassment, (2) that it cannot be liable for a pattern or practice of hostile work environment sexual harassment because its decentralized operations do not constitute a single work environment, and (3) that Plaintiff has not brought forth sufficient evidence to support its claim of hostile work environment sexual harassment.

979, 982 (2d Cir. 1991) (citation omitted).  If the moving party has met its burden, the

nonmoving party must come forward with specific facts showing that there is a genuine issue for

trial.  *See* Fed. R. Civ. P. 56(e).

**B.     Legal principles**

For purposes of this motion, the Court will assume that a plaintiff can bring a pattern-or-

practice action for hostile work environment sexual harassment.[4]  Unlike actions brought on

behalf of individual employees which seek individualized relief, "[a] pattern or practice case

seeks to eradicate systemic, company-wide discrimination . . . ."  *Mitsubishi*, 990 F. Supp. at

1070.  Courts generally resolve pattern or practice cases in two stages: "liability" and

"remedial."  *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 360-61 (1977).  At the

"liability" stage, the burden is on the plaintiff "to demonstrate that unlawful discrimination has

been a **regular procedure or policy** followed by an employer . . . ."  *Id.* at 360 (citation

omitted) (emphasis added).  To meet this burden, the plaintiff has "to prove more than the mere

occurrence of isolated or 'accidental' or sporadic discriminatory acts.  It ha[s] to establish by a

preponderance of the evidence that [sexual harassment] was [Defendant's] standard operating

_____

[4] At least five District Courts have so held.  *See Wilfong v. Rent-A-Center, Inc.*, No. 00-CV-680-DRH, 2001 WL 1795093, *5 (S.D. Ill. Dec. 27, 2001) (citations omitted); *EEOC v. Dial Corp.*, 156 F. Supp. 2d 926, 946 (N.D. Ill. 2001) (citations omitted); *Bremiller v. Cleveland Psychiatric Inst.*, 195 F.R.D. 1, 25 (N.D. Ohio 2000) (citations omitted); *EEOC v. Mitsubishi Motor Mfg. of Am., Inc.*, 990 F. Supp. 1059, 1070 (C.D. Ill. 1998); *Jenson v. Eveleth Taconite Co.*, 824 F. Supp. 847, 875-76 (D. Minn. 1993).  However, no Court of Appeals has yet addressed the question.  Since the Court can resolve Defendant's motion without considering this still uncertain theory of liability, it will do so.

procedure — the regular rather than the unusual practice." *Id.* at 336 (footnote omitted).[5]  If the plaintiff makes this *prima facie* showing, "[t]he burden then shifts to the employer to defeat the prima facie showing of a pattern or practice by demonstrating that the Government's proof is either inaccurate or insignificant."  *Id.* at 360.  If the defendant is unable to rebut the plaintiff's *prima facie* case, the Court proceeds to the "remedial" stage of the case.

In the specific context of hostile work environment sexual harassment pattern or practice claims, a plaintiff must prove,

> by a preponderance of the evidence, that an objectively reasonable person would find the existence of: (1) a hostile environment of sexual harassment within the company . . . and (2) a company policy of tolerating (and therefore condoning and/or fostering) a workforce permeated with severe and pervasive sexual harassment.  Determining whether a hostile work environment exists . . . , in a pattern or practice case, must be done by the trier of fact in light of the totality of the circumstances.

*Mitsubishi*, 990 F. Supp. at 1073.  Neither statute nor case law provides a definitive list of the relevant circumstances that a court should consider.  However, in a particular case, the nature of the plaintiff's offered proof and the nature of the defendant's business operations will indicate that certain criteria are relevant.

---

[5] The Supreme Court has approvingly quoted the words of Senator Humphrey:

> "'[A] pattern or practice would be present only where the denial of rights consists of something more than an isolated, sporadic incident, but is repeated, routine, or of a generalized nature.  There would be a pattern or practice if, for example, a number of companies or persons in the same industry or line of business discriminated, if a chain of motels or restaurants practiced racial discrimination throughout *all or a signficant part* of its system, or if a company repeatedly and regularly engaged in acts prohibited by the statute. . . .'"

*Int'l Bhd. of Teamsters* at 336 n.16 (quoting 110 Cong. Rec. 14270 (1964)) (emphasis added).

In the instant case, Plaintiff has submitted allegations from individual employees of Defendant in an attempt to show that there was a hostile environment of sexual harassment within Defendant's restaurants from 1993 to the present.  In order to determine whether these allegations are sufficient to show that sexual harassment was Defendant's standard operating procedure, the Court must compare the number of allegations to the total number of Defendants' female employees during the relevant period.  The Court must also consider the number of years over which the allegations arose.  Furthermore, the Court must examine certain aspects of the allegations and Defendant's workplace that are relevant to the issue of how the alleged conduct would affect the reasonable woman, e.g. whether the alleged harasser was a supervisory employee, whether the alleged harasser was likely to remain in Defendant's employ for a significant period of time, and whether the alleged victim was aware of conditions in Defendant's restaurants outside of the one in which she worked.

With these criteria in mind, the Court will set forth some background facts and then assess the sufficiency of Plaintiff's allegations.

**C.   Background facts**

As a preliminary matter, the Court has accepted the following facts as true.  The submissions to the Court reflect, and the parties agree, that Defendant had the following number of restaurants open for business on January 1 of each the following years:

| | |
|---|---|
| 1990 | 160 |
| 1991 | 164 |
| 1992 | 165 |
| 1993 | 177 |
| 1994 | 195 |
| 1995 | 219 |

|      |     |
|------|-----|
| 1996 | 218 |
| 1997 | 232 |
| 1998 | 333 |
| 1999 | 342 |
| 2000 | 350 |

*See* Defendant's Amended Statement of Material Facts at ¶ 9; Plaintiff's Statement of Material

Facts at ¶ 9.  Defendant claims that it employed the following number of people in its Burger

King restaurants in each of the years indicated:

|      |        |
|------|--------|
| 1993 | 20,225 |
| 1994 | 24,059 |
| 1995 | 25,196 |
| 1996 | 25,386 |
| 1997 | 31,899 |
| 1998 | 37,361 |
| 1999 | 38,219 |
| 2000 | 36,491 |
| 2001 | 34,465 |

*See* Defendant's Amended Statement of Material Facts at ¶ 80.  Defendant's records reflect that

the total number of employees that it employed in its Burger King restaurants from 1993-2001

was 172,649,[6] of whom it claims 90,835 were women and 82,264 were men.  *See* Defendant's

Amended Statement of Material Facts at ¶¶ 87, 88.[7]


**D.      Plaintiff's pattern or practice claims**

––––––––––––––––––––

[6] The Court notes that the total number of employees from 1993-2001 does not equal the
sum of the numbers of employees in each of those nine years because of the carryover of some
employees from one year to the next.

[7] Plaintiff denies that these numbers are correct.  *See* Plaintiff's Statement of Material
Facts at ¶¶ 80, 87, 88.  However, Plaintiff has failed to cite anything in the record that would
raise a factual issue as to the accuracy of Defendant's statements.  Therefore, the Court will
accept Defendant's statements as accurate.  *See* Local Rule 7.1(a)(3).

Plaintiff states that it has identified 511 claimants, women that Plaintiff has interviewed and who it believes were sexually harassed or subjected to a sexually hostile work environment, and 308 potential claimants.  *See* Declaration of Sunu P. Chandy, sworn to March 1, 2004 ("Chandy Aff."), at ¶ 7.  In support of this statement, Plaintiff has submitted 427 affidavits or declarations from claimants and witnesses and 160 summary statements from individuals who have not yet provided sworn statements.  *See id.* at Exhibits "1" and "2."  The Court has reviewed each of these submissions and has analyzed them to determine which ones set forth facts sufficient to constitute a claim of sexual harassment.[8]  The Court has considered the facts asserted in the light most favorable to Plaintiff.

As part of its analysis, the Court has considered the alleged frequency of the discriminatory conduct; its alleged severity; whether it was allegedly physically threatening or humiliating, or a mere offensive utterance; and whether it allegedly unreasonably interfered with an employee's work performance.  *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).  The Court has also considered the alleged "effect on the employee's psychological well-being . . . ." *Id.*  Additionally, given the circumstances of this case, the Court has considered whether the alleged harassers were supervisors of the alleged victims and, in those instances where vulgar language and sexually explicit jokes were alleged that were not expressly directed toward the alleged victim, whether the alleged victim communicated his or her offense to the speaker.[9]

---

[8] This process is necessarily imperfect.  Many of the statements are cursory and omit details that would be required for a more complete analysis.

[9] The Court recognizes that a victim of sexually harassing conduct need not always communicate his or her offense in order to establish liability under Title VII.  However, in the instant case, where the potentially objectionable language was frequently spoken by women or

(continued...)

Considering these factors, the Court finds that 333 of the statements allege facts which, if proven, could constitute sexual harassment.  The Court also finds that these 333 statements allege events that occurred at 206 distinct restaurants.[10]  Consequently, the Court finds that Plaintiff has produced evidence that only 333 out of 90,835, or .367%, of the women whom Defendant employed between 1993 and 2001 have alleged claims which, if proven, could constitute sexual harassment.[11,12]

---

[9](...continued)
during the course of conversations between men and women in which the women appeared to participate without offense, an expression of offense by the allegedly harassed person is both a reasonable expectation of social interaction and a contemporary indication of the alleged offense.

[10] This is a conservative count.  Many statements specify the addresses of the restaurants.  However, not all the addresses are complete, and some of them are expressed as intersections rather than street addresses.  The Court made some effort to reconcile these descriptions.  However, the Court could not readily reconcile several of these descriptions and has counted each distinct description as a distinct restaurant.

[11] This percentage is correct within an order of magnitude but is imprecise.  First, some of the statements assert facts that appear to constitute sexual harassment of persons other than the authors of the statements.  When the Court found that the facts asserted described an objectively hostile work environment, the Court accepted the statement as asserting facts constituting sexual harassment, whether or not the author of the statement indicated that he or she was offended by the conduct.  Second, other statements assert that their authors and others (named or unnamed) suffered sexual harassment.  When the Court found that the facts asserted constituted the sexual harassment of the statement author, the Court accepted the statement as asserting facts constituting the sexual harassment of the statement author but did not count the other allegedly harassed persons.

The Court concedes that this manner of analyzing Plaintiff's statements is imperfect.  The first approach creates the possibility of duplication and speculation as to offense.  The second approach creates the possibility that certain claimants are not identified.  However, the two tend to cancel each other.  Additionally, Plaintiff has had ample time to secure statements from those persons.  Therefore, the Court concludes that its approach results in a reasonably accurate result and does not prejudice Plaintiff.

[12] Assuming that Plaintiff could support its claim that there are 511 claimants, that would result in a finding that 511/90,835 or .563% of Defendant's female employees suffered sexual

(continued...)

Plaintiff argues that a statistical approach to analyzing its claim would not be appropriate because victims systematically under-report sexual harassment. Specifically, Plaintiff contends that many victims of sexual harassment will not report their experiences for fear of retaliation by Defendant and that Defendant might intimidate its employees to prevent them from cooperating with Plaintiff. However, such argument must be seen in the context of the particular case. Here, as Plaintiff concedes, Defendant's restaurants experience high employee turnover. *See* Plaintiff's Response to Defendant's Statement of Material Facts at ¶¶ 89-90. In fact, although Defendant employed 34,465 persons in 2001, it had employed 90,835 women between the years of 1993 and 2001. Therefore, as of 2001, the majority of the women whom Defendant had employed between 1993 and 2001 were no longer working for Defendant. Since any potential retaliation or intimidation that these women might face from Defendant is relatively minor, there is no basis to conclude that the number of Plaintiff's submissions reflects a systematic under-reporting of sexual harassment in Defendant's restaurants.

Plaintiff also argues that a statistical analysis of its submissions is misleading because multiple discrete incidents of sexual harassment may result in a cumulative level of hostility in the work environment greater than that indicated merely by counting the incidents. However, the strength of this argument depends upon whether the alleged victims are aware of the discrete incidents. Certainly a woman who has never directly been subjected to harassing conduct, but who is aware that other female co-workers have been so subjected, may reasonably regard her

_____

[12](...continued)
harassment. If the 308 women whom Plaintiff describes as potential claimants were included, that would result in a finding that 819/90,835 or .902% of Defendant's female employees suffered sexual harassment. These findings still fall well short of 1% of Defendant's female employees.

work environment as hostile.  However, in the instant case, Plaintiff's submissions indicate that most of Defendant's female employees did not work at more than one restaurant.  Consequently, they knew little of Defendant's policies and practices and the experiences of Defendant's employees beyond what they saw in their individual restaurants.  Therefore, the multiplying effect of incidents of sexual harassment is substantially weaker in this case than it is in cases involving more unified work environments and workforces.

The Court also notes that of the 333 alleged incidents of sexual harassment that the Court has identified, sixty-nine make allegations of harassment only against non-supervisory employees.  Another fifty-three make allegations of harassment only against low-level supervisors (i.e., shift supervisors, breakfast coordinators, and team leaders) and crew members.

Furthermore, Plaintiff has failed to produce any evidence that would establish the number of alleged harassers whom Defendant still employs.  Although there are some allegations that Defendant transferred alleged harassers from one restaurant to another, there are several allegations that alleged victims either knew that Defendant had terminated their alleged harassers or were aware that their alleged harassers were no longer working in the restaurant in which the harassment allegedly occurred.  Furthermore, Defendant states that investigations of the 159 sexual harassment complaints that it received between January 1, 1990, and June 30, 2000, and for which information is available, resulted in forty-two alleged harassers being terminated, eighteen being suspended, two being demoted, and thirty-four receiving written warnings.  *See* Defendant's Statement of Material Facts at ¶¶ 323-325.[13]

---

[13] Although Plaintiff objects to Defendant's statement of the total number of complaints that it received, the applicable time period, and the effectiveness of Defendant's remedial

(continued...)

Finally, the Court notes that of those 333 incidents that the Court has determined could constitute sexual harassment, 103 failed to claim that the alleged victim complained to anyone with supervisory authority.[14]  The failure of alleged victims to report harassment to supervisors is significant in at least two respects.  First, the failure to report raises doubts about the existence and seriousness of the alleged harassment.  Second, the failure of alleged victims to give Defendant an opportunity to respond by apprising it of their experiences weakens Plaintiff's contention that Defendant created a permissive workplace by failing to respond properly to alleged sexual harassment.

Although the Court cannot articulate a specific threshold for the number of claims that is necessary to establish a pattern or practice of sexual harassment, Plaintiff's allegations fall well short of what is required.  Based upon the evidence submitted, the Court does not find that even a substantial minority of Defendant's female employees experienced harassment "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'"  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (quotation omitted), or that sexual harassment was Defendant's "standard operating procedure — the regular rather than the unusual practice," *Int'l Bhd. of Teamsters*, 431 U.S. at 336 (footnote omitted).  Therefore, having considered all of the submissions and arguments in a

---

[13](...continued)
measures, it has not cited any evidence in the record that is in opposition to Defendant's statement of the number of persons that it disciplined in some way.  *See* Plaintiff's Response to Defendant's Statement of Material Facts at ¶¶ 323-325.

[14]Although there were women who alleged that they did not know how to file a complaint, other women stated that they complained by calling Defendant's corporate offices using the phone number on their paychecks.

light most favorable to Plaintiff, the Court concludes that Plaintiff has not shown that there is a genuine issue of material fact with respect to whether a pattern or practice of hostile work environment sexual harassment exists in Defendant's restaurants.

With respect to Plaintiff's claims of failure to remedy, retaliation, and constructive discharge, these claims arise from a subset of the alleged incidents of sexual harassment. In view of the Court's finding with respect to whether a pattern or practice of sexual harassment existed in Defendant's restaurants, these claims also fail to show that there is a genuine issue of material fact with respect to whether there was a pattern or practice of failure to remedy, retaliation, and constructive discharge.[15]

Finally, as stated above, the Court notes that the parties have not briefed, and the Court's rulings do not affect, Plaintiff's claims on behalf of individual employees.  Therefore, the Court instructs the parties to contact Magistrate Judge Lowe's chambers to establish a discovery and motion schedule with respect to those claims.

### III. CONCLUSION

After carefully considering the file in this matter, the parties' submissions and oral arguments, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendant's motion for summary judgment with respect to Plaintiff's pattern or practice claims of sexual harassment, failure to remedy, retaliation, and constructive

---

[15] As the Court noted above, of the 333 statements that Plaintiff has submitted that allege sexual harassment, 103 give no indication that the alleged victim informed anyone with supervisory authority of the harassment.  Such failure to inform weakens Plaintiff's claims of failure to remedy and retaliation.

discharge is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's motions to exclude the opinions of Defendants' experts,

Eugene P. Ericksen and David S. Evans, and Defendant's motion to exclude the opinions of

Plaintiff's expert, Louise Fitzgerald, are **DENIED** as moot; and the Court further

**ORDERS** that the parties contact Magistrate Judge Lowe's chambers to establish a

discovery and motion schedule with respect to the claims that Plaintiff has asserted on behalf of

Defendant's individual employees within **ten (10) days** of the date of this Order**.**

**IT IS SO ORDERED**.


Dated: April 20, 2005
          Syracuse, New York




_____
Frederick J. Scullin, Jr.
Chief United States District Court Judge

-14-